IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
APR 3 , 2003

MEDICAL BILLING CONSULTANTS, INC. )
d/b/a Medbillz.com, )

Judge James B. Moran
United States District Court

|  |  |
|---|---|
| MEDICAL BILLING CONSULTANTS, INC. d/b/a Medbillz.com, | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| INTELLIGENT MEDICAL OBJECTS, INC. and FRANK NAEYMI-RAD, | ) ) ) |
| Defendants. | ) ) |

Case No. 01 C 9148

Hon. James B. Moran

Magistrate Judge Nolan

**DOCKETED**

MAY 0 1 2003

## NOTICE OF FILING

TO:    See attached Certificate of Service

PLEASE TAKE NOTICE that on April 30, 2003, we filed with the Clerk of the United States

District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street,

Chicago, Illinois 60604, Plaintiff Medical Billing Consultants, Inc.'s Second Amended Complaint

(Revised) and Certificate of Service of same, copies of which are hereby served upon you.

Dated:   April 30, 2003                 By:   _____
                                              One of the Attorneys for Plaintiff
                                              Medical Billing Consultants, Inc.

Kristin J. Achterhof
Floyd A. Mandell
Harold H. Davis, Jr.
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661-3693
(312) 902-5200

## CERTIFICATE OF SERVICE

I, Kristin J. Achterhof, an attorney, state that I caused a copy of Plaintiff Medical Billing Consultants, Inc.'s Second Amended Complaint (Revised) and Notice of Filing of same to be served upon:

> Mark V.B. Partridge
> Gary A. Pierson II
> PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD
>  & GERALDSON
> 311 South Wacker Drive, Suite 500
> Chicago, IL 60604
> Phone: 312-544-7922
> Fax: 312-544-8015

*via* Hand Delivery, on this 30th day of April, 2003.

Kristin J. Achterhof

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

MEDICAL BILLING CONSULTANTS, INC.,
d/b/a Medbillz.com,

APR 3 2003

Plaintiff, Judge James B. Moran
United States District Court

v.

INTELLIGENT MEDICAL OBJECTS, INC. and
FRANK NAEYMI-RAD,

Defendants.

Case No. 01 C 9148

Hon. James B. Moran

Magistrate Judge Nolan

**DOCKETED**

MAY 0 1 2003

## SECOND AMENDED COMPLAINT
### (Revised)

Plaintiff, MEDICAL BILLING CONSULTANTS, INC., d/b/a Medbillz.com
("MBC"), by and through its undersigned attorneys, for its Second Amended Complaint
(Revised) against Defendants, INTELLIGENT MEDICAL OBJECTS, INC. ("IMO") and
FRANK NAEYMI-RAD, states as follows:

### THE PARTIES

1. Plaintiff MBC is a corporation duly organized and existing under the laws
of the State of Illinois, having its principal place of business at 200 South Michigan
Avenue, Suite 805, Chicago, Illinois 60604. At all times relevant to this action, MBC
has been engaged in the design and sale of an online medical billing and coding
information system.

2. Defendant IMO is a corporation duly organized and existing under the
laws of the State of Illinois, having a principal place of business at 60 Revere Drive, Suite

1



475, Northbrook, Illinois 60062-4080. At all times relevant to this action, IMO has been engaged in the marketing, development and sale of computer software products.

3.     Defendant FRANK NAEYMI-RAD is an individual residing in the State of Illinois, and at all times relevant to this action, has acted as the Chief Executive Officer and majority shareholder of IMO, and has authorized and/or actively participated in the acts alleged herein.

## NATURE OF THIS ACTION

4.     This action has been filed in response to Defendants' scheme to fraudulently induce MBC to place its trust and confidence in IMO as its software development company, and Defendants' efforts to maliciously exploit and encroach upon the property rights of Medibillz for Defendants' own pecuniary profit.

5.     MBC brings this action pursuant to 17 U.S.C. § 101, *et seq*, federal law, and seeks a preliminary and permanent injunction, treble damages, costs and attorneys' fees, as authorized by law.

6.     MBC further brings these pendant, state law actions, pursuant to state common law and Illinois statutory law and seeks money damages, costs, permanent injunction and attorney fees.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over MBC's claims for copyright infringement and related claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over MBC's claims arising under the statutory and common laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because these claims are so related to MBC's claims arising under federal law that the

2

state law claims form part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because the conduct, events and/or omissions giving rise to the claims alleged herein occurred substantially, if not entirely, within this judicial district, and Defendants are conducting business and/or residing within this judicial district.

## CLAIMS ARISING UNDER FEDERAL LAW

### Factual Allegations

9.     MBC was formed on or about July 1, 1999, for the purpose of developing and implementing a unique Internet-based medical information system called "Medbillz.com," which would provide healthcare professionals with, among other things, up-to-date and comprehensive medical billing and coding information (typically found in various coding books and bulletins) in an easily accessible electronic format.

10.     The business model for Medbillz.com focused on a target market comprised of healthcare professionals and providers, such as hospitals, physicians' offices, billing services, pharmaceutical companies, and others, and a revenue base derived from the sale of subscriptions to a novel online information service designed to simplify the complex array of codes and data associated with billing insurers and other third-parties in compliance with myriad and ever-changing federal statues and codes.

11.     In addition to assisting subscribers with compliance issues, MBC intended that its online medical information system would improve medical billing efficiency for medical offices, hospitals and other medical service providers by decreasing the amount

3

of administrative time required to complete billing tasks, and that its subscribers ultimately would realize a financial benefit flowing from a significant decrease in the number of payment applications rejected due to improper coding.

12.     At the time MBC was formed, the availability of such a comprehensive, Internet-based medical information service, offering continuously updated information on medical billing procedures, coding requirements, and other valuable information and services for healthcare professionals, was limited. Indeed, Medbillz.com was to be the first such offering made to the Midwest medical community, which provided MBC with a substantial competitive advantage.

13.     MBC has paid IMO $181,636.00, representing all amounts due to be paid to IMO in exchange for delivery to Medbillz.com in complete and marketable form with current databases, Local Medicare Review Policies, and correct coding information.

14.     On August 11, 2000, MBC, IMO and FRANK NAEYMI-RAD, *individually*, executed a written copyright assignment, by which IMO and FRANK NAEYMI-RAD further recognized that IMO and FRANK NAEYMI-RAD conveyed to MBC any and all interests of any kind in any copyrights related to Medbillz.com. By this assignment, IMO and FRANK NAEYMI-RAD recognized that they had no right to copyrights related in any respect to the operation, appearance and function of Medbillz.com, and expressly acknowledged that their contribution to the work was a work-for-hire. (A copy of "Medical Billing Consultants, Inc. Copyright Assignments of Entire Interests," dated August 11, 2001 (the "Copyright Assignment"), is attached as Exhibit A.).

15.     Following the final payment made by MBC to IMO on August 11, 2000,

4

FRANK NAEYMI-RAD continued to demand that MBC grant Defendants an equity interest in Medbillz.com. However, MBC refused to agree to such an arrangement.

16.     Under the terms of the Agreement, IMO was to deliver software of Medbillz.com in complete functional and marketable form to MBC. However, the computer programs and software code developed and delivered by IMO are defective in many materials respects.

17.     Without the approval, consent or knowledge of MBC, IMO continued to use MBC's copyrighted software, embedded object files into MBC software which MBC could not access without specific source code retained by IMO. And further, as a result of IMO's failure and refusal to provide MBC with the necessary coding and access to the computer programs and software which it had purchased, changes to the system and updates to the database could be performed solely by IMO. MBC contractors were thereby barred from using, copying and otherwise exercising MBC's rights under the copyright statute.

## Count I

## (Copyright Infringement)

18.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 1-17, inclusive.

19.     This Count arises under 17 U.S.C. § 101 *et seq.*

20.     On August 11, 2000, IMO and FRANK NAEYMI-RAD assigned and conveyed for a consideration of $181,636.00 all copyrightable interest in the software which is the subject matter of this lawsuit.

21.     Between November 7, 2001 and January 24, 2003, MBC applied for copyrights for the computer source code and documentation developed by IMO as a work for hire and sold to MBC for a price of $181,636.00 with the United States Copyright Office, and Certificates of Registration, No. TXu 998-481, TXu 1-055-402, and TXu 1-063-180 have been issued, effective November 7, 2001, October 29, 2002, and January 24, 2003. (A copy of the Certificates of Registration, Nos. TXu 998-481, TXu 1-055-402, and TXu 1-063-180 are attached hereto and incorporated herein as Exhibits B, C, and D, respectively.)

22.     MBC is the sole owner of the copyrights associated with the software for the Medbillz.com web site and no valid assignments from MBC to anyone exists as to IMO's ownership rights.

23.     The works associated with Medbillz.com possess the requisite originality as demanded by 17 U.S.C. § 101 *et seq.* and as such MBC was properly granted an authentic and valid copyright.

24.     Defendants have willfully infringed the MBC's copyright by using, copying, marketing and selling the copyrighted material after notice to cease and desist by MBC. Therefore, MBC seeks treble damages for this infringement.

25.     MBC has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill, as well as losses in an amount not yet ascertainable, but which will be determined according to proof.

26.     As a result, MBC is entitled to receive the profits made by IMO and FRANK NAEYMI-RAD from their wrongful acts pursuant to 17 U.S.C. § 101 *et seq.*, 504.

6

27.     In the alternative, MBC is entitled to statutory damages pursuant to 17 U.S.C. § 101 *et seq.*, 504(c).

28.     MBC is entitled to injunctive relief pursuant to 17 U.S.C. § 101 *et seq.*, 502, based on the damages that MBC will continue to sustain if injunctive relief is not granted.

## Prayer For Relief For Claims Arising Under Federal Law

WHEREFORE, as to the claim for copyright infringement set forth herein, Plaintiff, MEDICAL BILLING CONSULTANTS, INC., respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

A.     Requiring Defendants to:

        (ii)     account for and pay over to Plaintiff all profits derived by Defendants from the acts complained of herein;

        (ii)     reimburse Plaintiff for all damages suffered by Plaintiff by reason of Defendants' acts complained of herein, including treble damages for willful infringement; and

        (iii)     remit to Plaintiff punitive damages by reason of Defendants' willful, malicious and tortious acts complained of herein;

B.     Requiring Defendants to reimburse Plaintiff for the costs of this action, together with Plaintiff's reasonable attorneys' fees and disbursements;

C.     Awarding Plaintiff prejudgment interest on any and all damages awarded to it;

7

D.    Ordering that Defendants, including any and all partners, agents, servants, and representatives of Defendants, and all other persons, firms, corporations, or other entities in active concert or participation with any of them, be preliminarily and thereafter permanently enjoined and restrained from:

(i)    any further copying, using, marketing, distributing or sale of the intellectual property conveyed to Plaintiff pursuant to the document entitled "Medical Billing Consultants, Inc. Copyright Assignments of Entire Interests, dated August 11, 2001;"

(ii)    engaging in any other act intended to prevent or preclude Plaintiff from exercising its right to use, copy and exploit the property conveyed to Plaintiff pursuant to the document entitled "Medical Billing Consultants, Inc. Copyright Assignments of Entire Interests, dated August 11, 2001;" and

(iii)    engaging in any other act constituting unfair competition with Plaintiff or constituting infringement of Plaintiff's intellectual property; and

E.    Awarding Plaintiff such other relief that this Court determines is just and equitable.

### CLAIMS ARISING UNDER STATE LAW

### Factual Allegations Common to Counts II-VII

29.    MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 1-17, inclusive.

8

30.     Due to the myriad and complex issues involved in medical billing processes and statutory compliance, and the unique features associated with MBC's underlying business model, Dr. Steven J. DeAngeles, M.D., a Chicago physician and founding president of MBC, determined that MBC would need to rely upon the expertise of professional software designers and developers in order to successfully design and develop the computer programs and other software components necessary to launch Medbillz.com.

31.     In August or September 1999, Dr. DeAngeles met with FRANK NAEYMI-RAD, Chief Executive Officer of IMO, as part of his effort to interview potential programming consultants for Medbillz.com,  During their initial discussions, FRANK NAEYMI-RAD represented to Dr. DeAngeles that MBC could rely upon IMO to design, develop, and ultimately, provide MBC with the computer programs and software components that MBC would need to operate and update its Medbillz.com information system in a manner consistent with MBC's business plans.

32.     Following the initial discussions between Dr. DeAngeles and FRANK NAEYMI-RAD, IMO and FRANK NAEYMI-RAD made numerous representations to MBC in an effort to  obtain the trust and confidence of MBC, and ultimately, convince MBC that it should retain IMO for this project.   The representations included, but were not limited to, the following:

        (a)     That IMO possessed the necessary expertise and skill to design the
                system and complete the computer programming necessary to
                ensure that Medbillz.com would function consistent with MBC's

business plan and meet the functional and requirements specifications provided by IMO;

(b) That IMO possessed the personnel and resources to implement and launch Medbillz.com in a timely fashion, so as to capitalize upon the uniqueness of MBC's business model;

(c) That IMO would be paid on an hourly basis;

(d) That IMO would develop the web-accessible information system and deliver the entire, completed system to MBC upon final payment;

(e) That IMO would design the Medbillz.com website in such a way as to allow for changes to the system and updates; and

(f) That MBC could trust IMO to keep MBC's business ideas and business model in absolute confidence.

33. IMO also produced a "Requirements Specification Document," dated January 4, 2000, for the stated purpose of "identify[ing] the customer requirements for developing a website designed to provide high quality coding information and to assist billing professionals increase reimbursements and reduce claim resubmittals with decision support tools." (A copy of the Requirements Specification Document is attached hereto and incorporated herein as Exhibit E.) At and prior to the time that IMO prepared the Requirements Specifications Document, and repeatedly thereafter, IMO and FRANK NAEYMI-RAD promised to develop and deliver the computer programs and software components necessary to meet the requirements set forth therein.

10

34.     Recognizing IMO's purported expertise in the area of computer systems design and development, and relying upon the representations of IMO and FRANK NAEYMI-RAD, MBC ultimately agreed to enter into a relationship with IMO for the development of Medbillz.com.

35.     On January 17, 2000, IMO and MBC entered into a "Consulting Agreement" ("Agreement"), for the provision of computer goods and services. The parties subsequently executed Addendum I, Addendum II and Addendum III, which became a part of the Agreement. (Copies of the Agreement and supporting Addenda are attached hereto and incorporated herein as Exhibit F.)

36.     MBC was not involved in drafting the Agreement and was not represented by legal counsel in connection with its dealings with IMO and FRANK NAEYMI-RAD until months after the Agreement was executed.

37.     Under the terms of the Agreement, IMO promised to design, develop and deliver the Medbillz.com web-based medical information system to MBC according to the requirements and specifications set forth in MBC's business plan and the specification documents prepared by IMO.  IMO further promised it would perform under the Agreement "in a workmanlike and professional manner."

38.     The Agreement also provided that "[i]t is the intention of the parties that Consultant [IMO] be an independent contractor and not an employee, agent, joint venturer or partner of Customer [MBC]."

39.     Relying upon IMO's purported technical expertise and relevant experience in medical software development and applications, and the representations made by IMO and FRANK NAEYMI-RAD,  MBC came to place great trust and confidence in IMO

11

and its ability and commitment to provide the technical support necessary for launching and sustaining MBC's business. Therefore, MBC did not seek the advice of legal counsel in connection with its negotiations with IMO or its decision to execute the Agreement

40.     In late January 2000 or early February 2000--shortly after IMO and MBC had entered into the Agreement, and after IMO and FRANK NAEYMI-RAD had reviewed MBC's business plans and related financial projections for Medbillz.com-- FRANK NAEYMI-RAD approached Dr. DeAngeles and indicated that because he recognized the value and potential for profit in the business model for Medbillz.com, he would like to have an equity interest in the company. Dr. DeAngeles rejected FRANK NAEYMI-RAD's request, emphasizing that MBC did not wish to modify the nature of the parties' relationship as set forth in the Agreement.

41.     Notwithstanding this initial rejection, at all times relevant hereto, FRANK NAEYMI-RAD repeatedly requested that Defendants receive an equity interest in MBC, through a joint venture arrangement or otherwise. However, MBC refused to grant such requests.

42.     Immediately following the initial rejection of FRANK NAEYMI-RAD's request for an ownership interest in MBC, IMO's programming efforts slowed, error rates increased, and IMO failed to allow for or provide critical updates to the database

43.     In June 2001, MBC continued to demand that IMO perform its obligations under the Agreement, including the installation and updating of critical Medicare Bulletin information, Local Medicare Review Policies, and other important data. MBC could not effectively market Medbillz.com without this information, as the absence of the data

12

compromised the accuracy and utility of the site from the perspective of potential subscribers.

44.     At all times relevant hereto, IMO and FRANK NAEYMI-RAD were specifically aware that installing this missing information and updating information previously placed on the database was of critical importance to the marketability of Medbillz.com.

45.     Notwithstanding IMO's obligation to complete the Medbillz.com project in marketable form, on June 21, 2001, FRANK NAEYMI-RAD and IMO advised MBC that the remaining work under the Agreement would not be performed *unless* MBC agreed to convey an equity interest and enter into a joint venture with IMO.  (See Correspondence of Frank Naeymi-Rad dated June 21, 2001, attached hereto as Exhibit G.)

46.     Once again, MBC refused to accede this request, and continued to demand IMO's performance of the remaining work necessary for completion, launch and operation of Medbillz.com under the terms of the Agreement.

47.     In August 2001, Defendants and MBC had numerous discussions concerning the completion of the website, culminating in an agreed final payment price of $181,636.00.

## Count II

### (Breach of Contract)

48.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 29-47, inclusive.

49.     This Count arises under the common law of Illinois.

50. MBC and IMO entered into a valid and enforceable contact dated January 17, 2000 (*See* Exhibit F).

51. MBC has fully complied with its contractual obligations set forth in the Agreement.

52. IMO has breached the Agreement, through one or more acts, including, but not limited to:

(a) failing to deliver a fully functional and marketable computer program to Medbillz.com, as promised;

(b) withholding codes required to change and update Medbillz.com;

(c) failing to deposit the source code with IMO's solicitor as demanded and as required by the Agreement;

(d) failing to correct errors and omissions in the source code;

(e) failing to include certain of the information and databases on the Medbillz.com website as promised; and

(f) otherwise failing to develop, design and deliver the program that is the subject of the agreement in a workmanlike and professional manner, as warranted.

53. Despite efforts by MBC to obtain IMO's compliance of its obligations, IMO continues to breach the Agreement by failing to perform pursuant to the terms of the Agreement and as promised, and thereby has deprived MBC of, among other things, the benefit of the bargain.

14

54.     The foregoing acts of IMO constitute breach of contract under the common law of Illinois, and as a result of IMO's breach of the Agreement, MBC has suffered damages in excess of $181,636.00, plus costs and lost profits.

## Count III

### (Breach of Fiduciary Duty)

55.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 29-54, inclusive.

56.     This Count arises under the common law of Illinois.

57.     A fiduciary relationship existed in this case between MBC and Defendants due to the peculiar trust and confidence placed in IMO and FRANK NAEYMI-RAD by IMO.

58.     IMO was not knowledgeable regarding the technical aspects of designing and developing computer programs and software components, and Dr. DeAngeles was not familiar with or knowledgeable regarding the nuances and complexities involved in a transaction of the type at issue in this case. Dr. DeAngeles and IMO placed their trust and confidence in IMO and FRANK NAEYMI-RAD, and Defendants assumed control, responsibility and a corresponding repose of trust in its dealings with MBC.

59.     Notwithstanding the fact that IMO and FRANK NAEYMI-RAD voluntarily and knowingly assumed a confidential relationship with MBC, Defendants acted at the expense of that relationship by, among other things:

(a)     fraudulently inducing MBC to enter into a contract containing unconscionable terms which Defendants would later use to prevent

15

MBC from obtaining the valuable system which it had agreed to purchase;

(b) failing to deliver an online medical information system as warranted and promised under the terms of the Agreement and according to the specifications provided and the representations made to MBC; and

(c) otherwise dealing in the property of MBC for their own pecuniary profit.

60. By knowingly taking advantage of the condition, circumstances and necessity of MBC, Defendants intentionally breached their fiduciary obligations to MBC.

61. If MBC had known that Defendants' were taking advantage of the parties' relationship and that Defendants were not dealing fairly, MBC would not have paid IMO the substantial sums that it did, and it would not have continued to invest the valuable time that it invested in its relationship with Defendants. Furthermore, as a result of Defendants' breach of duty, MBC has missed opportunities to successfully launch Medbillz.com as planned, and instead has been forced to delay, at great expense.

62. The foregoing acts of Defendants constitute breach of fiduciary duty under the common law of Illinois. As a direct and proximate result of Defendants' breach of fiduciary duty, MBC has suffered damages in excess of $181,636.00, plus costs and lost profits. Furthermore, the fact that Defendants intentionally breached their fiduciary obligations warrants an award of punitive damages under Illinois law.

## Count IV

### (Common Law Fraud)

63.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 29-62, inclusive.

64.     This Count arises under the common law of Illinois.

65.     As set forth herein, IMO and FRANK NAEYMI-RAD made material false representations to MBC with the knowledge that MBC would rely on them.

66.     MBC reasonably relied on Defendants' false statements and was injured thereby.

67.     Defendants' actions were undertaken with malice, aggravation and/or egregious fraud and oppression. Defendants' misrepresentations were continuous and were made with the intent to conceal Defendants' scheme to injure MBC and benefit thereby.

68.     As a result of Defendants' fraudulent acts, MBC has suffered in excess of $181,661.00, plus costs and lost profits. In addition, MBC requests punitive damages for Defendants' aggravated and egregious fraud.

## Count V

### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

69.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 29-68, inclusive.

70.     This count arises under the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS § 505/2.

17

71.     The actions of IMO and FRANK NAEYMI-RAD, as set forth herein, constitute violations of this Act.

72.     The fraudulent actions of IMO and FRANK NAEYMI-RAD have proximately caused irreparable damage to the business of MBC, deprived MBC of current and future revenue, removed the possibility of primacy in the marketplace for Medbillz.com critical to Internet-based businesses, and otherwise irreparably damaged MBC.

73.     As a result of Defendants' violations of this Act, MBC is entitled to recover the damages it has and will continue to sustain as a result of the Defendants willful deception, including, but not limited to, all of the Defendants' profits resulting from Defendants' deceptive trade practices, costs, prejudgment interest, attorney's fees and punitive damages.

### Count VI

**(Violation of the Uniform Deceptive Trade Practices Act)**

74.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 29-73, inclusive.

75.     This count arises under the Illinois Uniform Deceptive Trade Practices Act. 815 ILCS § 510/1, *et seq.*

76.     By the acts alleged herein, Defendants FRANK NAEYMI-RAD and IMO intentionally made false representations of material facts in order to derive personal financial benefit.

77.     MBC's reliance upon Defendants' false representations was reasonable under the circumstances presented herein.

78.     The actions of IMO and FRANK NAEYMI-RAD constitute violations of this Act.

79.     The fraudulent and deceptive practices of IMO and FRANK NAEYMI-RAD have caused irreparable damage to the business of MBC, deprived MBC of current and future revenue, removed the possibility of primacy in the marketplace for Medbillz.com critical to Internet-based businesses, and otherwise irreparably damaged MBC.

80.     MBC is entitled to recover the damages it has and will continue to sustain as a result of the Defendants willful deception, including, but not limited to, all of the Defendants' profits resulting from Defendants' deceptive trade practices,     costs, prejudgment interest, attorney's fees and punitive damages.

### Count VII

### (Conversion)

81.     MBC repeats and incorporates by this reference each and every allegation set forth in paragraphs 1-80, inclusive.

82.     This count arises under the Illinois common law of conversion.

83.     Defendants have asserted control over MBC's property, as set forth herein.

84.     MBC has valid and exclusive proprietary rights to the source code and computer programs that have been developed by Defendants under the Agreement, and Defendants' failure to allow MBC control and dominion of its property, notwithstanding repeated requests for the release and delivery of such property to MBC, has caused MBC to suffer damages.

19

85. As a result of Defendants' deprivation of control and dominion of what is rightfully MBC's property, MBC is entitled to, at a minimum, monetary damages and injunctive relief.

## Prayer For Relief For Claims Arising Under State Law

WHEREFORE, as to the foregoing claims arising under state law (Counts II through VII), Plaintiff, MEDICAL BILLING CONSULTANTS, INC., respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

A. Requiring Defendants to:

    (i) account for and pay over to Plaintiff all profits derived by Defendants from the acts complained of herein;

    (ii) reimburse Plaintiff for all damages suffered by Plaintiff by reason of Defendants' acts complained of herein; and

    (iii) remit to Plaintiff punitive damages by reason of Defendants' willful, malicious and tortious acts complained of herein;

B. Requiring Defendants to reimburse Plaintiff for the costs of this action, together with Plaintiff's reasonable attorneys' fees and disbursements;

C. Awarding Plaintiff prejudgment interest on any and all damages awarded to it;

D. Ordering that Defendants, including any and all partners, agents, servants, and representatives of Defendants, and all other persons, firms, corporations, or other entities in active concert or participation with any of them, be required to deliver to Plaintiff the source code and computer programs developed under the Agreement; and

E.    Awarding Plaintiff such other relief that this Court determines is just and equitable.

Plaintiff demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated:    April 30, 2003

By: _____

One of the Attorneys for Plaintiff MEDICAL BILLING CONSULTANTS, INC.

Kristin J. Achterhof  (No. 06206476)
Floyd A. Mandell  (No. 01747681)
Harold H. Davis, Jr. (No. 90785443)
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe St., Suite 1600
Chicago, IL 60661
(312) 902-5200

James P. Chandler (No. 90785301)
THE CHANDLER LAW FIRM CHARTERED
1815 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
(202) 296-8484

# See Case File For Exhibits